Slip Op. 15 - 92

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| DIAMOND SAWBLADES MANUFACTURERS' COALITION, : : : : Plaintiff, : : v. : : UNITED STATES, : : Defendant, : : and : : BEIJING GANG YAN DIAMOND PRODUCTS COMPANY, and GANG YAN DIAMOND PRODUCTS, INC., : : : Intervenor-defendants. : | Before: R. Kenton Musgrave, Senior Judge Court No. 13-00168 |

## OPINION AND ORDER

[Denying motion to dismiss, granting motion for preliminary injunction, and granting motion for voluntary remand of determination in section 129 proceeding to partially revoke antidumping duty order on diamond sawblades and parts thereof from the People's Republic of China.]

Dated:  August 20, 2015

*Daniel B. Pickard* and *Maureen E. Thorson*, Wiley Rein LLP, of Washington, DC, for the plaintiff.

*Alexander V. Sverdlov*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for the defendant.  With him on the brief were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Franklin E. White, Jr.*, Assistant Director.  Of Counsel on the brief was *Aman Kakar*, Attorney, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, of Washington, DC.

*Jeffrey S. Neeley* and *Michael S. Holton*, Husch Blackwell, LLP, of Washington, DC, for the intervenor-defendants.

Musgrave, Senior Judge:   The plaintiff, Diamond Sawblades Manufacturers'
Coalition ("DSMC"), brought this suit to challenge a determination of the International Trade
Administration, U.S. Department of Commerce ("Commerce") made pursuant to section 129 of the
Uruguay Round Agreements Act, Pub. L. No. 103-465, §129, 1087 Stat. 4809, 4836-39 (1994)
(section 129), 19 U.S.C. § 3538, in connection with the antidumping investigation of diamond
sawblades from the People's Republic of China ("PRC").   *See Certain Frozen Warmwater Shrimp
from the PRC and Diamond Sawblades and Parts Thereof From the PRC* (notice of section 129
implementation and partial revocation), 78 Fed. Reg. 18958 (Mar. 28, 2013) ("*Implemented PRC
Section 129 Determination*").   That determination resulted in revocation of the antidumping duty
order on subject merchandise with respect to the "ATM entity."[1]

Now before the court are a motion for voluntary remand filed by Commerce, a motion
to dismiss filed by ATM, and a motion for "preliminary" (*pendente lite*) injunction filed by the
DSMC.   For the following reasons, the motion to dismiss will be denied and the motions for
preliminary injunction and remand granted.

## I.  *Background*

The history of the diamond sawblades from the PRC antidumping investigation is
presumably familiar.  Briefly, in 2006 Commerce determined that certain PRC producers of diamond

---

[1]  The members of the ATM entity are: Advanced Technology & Materials Co., Ltd.; Beijing
Gang Yan Diamond Products Co. (a/k/a Beijing Gang Yan Diamond Products Co., Ltd., Beijing
Gang Yan Diamond Products Company); HXF Saw Co., Ltd. (a/k/a Yichang HXF Circular Saw
Industrial Co., Ltd.); AT&M International Trading Co., Ltd. (a/k/a ATM International Trading Co.,
Ltd.); and Cliff International Ltd. (a/k/a Cliff (Tianjin) International Ltd., Cliff (Tianjin) International
Ltd., Company).  For the sake of consistency, the intervenor-defendants Beijing Gang Yan Diamond
Products Co. and Gang Yan Diamond Products, Inc., will be referenced herein as "ATM."

sawblades, including the collapsed ATM entity, were dumping their products, while the International

Trade Commission ("ITC") determined that there was no injury, either material or threat thereof.

*See Diamond Sawblades and Parts Thereof from the PRC*, 71 Fed. Reg. 29303 (May 22, 2006) (final

determination), as amended, 71 Fed. Reg. 35864 (June 22, 2006) (amended final determination)

("*LTFV Final Result*").   After numerous court proceedings, the ITC reversed its position,

determining there to be threatened material injury, and Commerce published the antidumping duty

order in 2009.  *Diamond Sawblades and Parts Thereof from the PRC and the Republic of Korea*, 74

Fed. Reg. 57145 (Nov. 4, 2009) ("Order").

　　　　　Among its other findings during its investigation, Commerce concluded that the

collapsed ATM entity had demonstrated independence from government control, and therefore was

entitled to receive its own calculated rate.   DSMC and certain respondents challenged the *LTFV*

*Final Result*; among other aspects, DSMC contested the ATM entity's entitlement to a separate rate.

*Advanced Technology & Materials Co. v. United States*, 37 CIT ___, 938 F. Supp. 2d 1342 (2013).

After two remands, Commerce determined that the ATM entity had not, in fact, satisfied the

requirement for a separate rate because it had failed to rebut the presumption of state control.  *Id*. at

1345.  Commerce therefore assigned the ATM entity the country-wide margin of 164.09 percent. *Id*.

The appeals affirmed this determination.  37 CIT at ___, 938 F. Supp. 2d at 1353, *aff'd*, 541 Fed.

Appx. 1002 (Fed. Cir. 2013).

　　　　　While these challenges were being litigated in these courts, the PRC government

challenged a different aspect of Commerce's diamond sawblades investigation before a certain

foreign trade organization ("WTO"), namely, Commerce's use of its long-standing "zeroing"

methodology to calculate the final antidumping duty rates.  In June 2012, a WTO panel ruled that the use of zeroing in calculating certain dumping margins was not consistent with the United States' obligations under the Antidumping Agreement, and the WTO Dispute Settlement Body subsequently adopted the panel report.  See WTO Panel Report, *United States -- Anti-Dumping Measures on Certain Shrimp and Diamond Sawblades from [the People's Republic of] China*, WT/DS422/R (June 8, 2012).

After receipt of a letter from the USTR with respect thereto dated September 2, 2012, *see* Def-Int's Appx. to Opp. to Mot. for Prelim. Inj. at Tab 2, ECF No. 71 (July 17, 2015), Commerce initiated proceedings pursuant to the requirements of section 129 to bring the United States into compliance with the WTO decision on the diamond sawblades and parts thereof from the PRC investigation.  *See* 19 U.S.C. § 3538(b). After releasing a preliminary determination and considering the parties' comments, Commerce issued a final section 129 determination on March 4, 2013. As part of that determination, Commerce continued to assign the ATM entity a separate rate (just as it had prior to the litigation in the investigation), and recalculated that rate without using zeroing.  Recalculation resulted in a *de minimis* or zero margin. *See Final Results of the Proceeding under Section 129 of the Uruguay Round Agreements Act: Antidumping Measures on Diamond Sawblades and Parts Thereof from the PRC* (Mar. 4, 2013) ("PRC Section 129 Final"), PDoc 23.

On March 22, 2013, the USTR instructed Commerce to implement the PRC Section 129 Final. *See Implemented PRC Section 129 Determination.*

The genesis of the specific lawsuit before this court can be traced back to earlier parallel proceedings that involved the antidumping duty order on diamond sawblades and parts

thereof from the Republic of Korea ("Korea").  Similar to the WTO action brought by the PRC

government for the benefit of the ATM entity, as a result of a successful WTO action brought by the

Korean government and subsequent instruction from the United States Trade Representative to

Commerce to "implement" the adverse WTO decision pursuant to section 129, Commerce

announced that it would revoke the Korean antidumping duty order due to the *de minimis* margins

recalculated without zeroing.  Because of the impact revocation would have on the DSMC's then-

ongoing litigation over the investigation of subject merchandise from Korea (and the margins

determined thereat), the DSMC sought to enjoin that revocation, but did not successfully persuade

that such enjoinder was appropriate, although the DSMC did obtain enjoinder of liquidation of

entries of that subject merchandise.  *See Diamond Sawblades Manufacturers Coalition v. United

States*, 35 CIT ___, Slip Op. 11-137 (Nov. 2, 1011) (denying enjoinder of revocation of antidumping

duty order on diamond sawblades and parts thereof from the Republic of Korea on ground that

enjoinder would  inappropriately interfere with agency's lawful conduct of its duties).

Thus, in light of publication of the *Implemented PRC Section 129 Determination*, on

May 24, 2013, DSMC filed its complaint to challenge that determination.  *See* Compl. at 1 (May 24,

2013), ECF No. 9.  In paragraph 14 of its complaint, DSMC challenged Commerce's calculation of

ATM's margin in the section 129 determination due to Commerce's final determination in the

investigation that ATM was eligible for a separate rate.  *Id*. at 5-6.  After issuance on October 11,

2013 of this court's decision sustaining Commerce's redetermination of the ATM entity as ineligible

for a separate rate, the DSMC filed its motion for judgment and supporting brief on December 16,

2013, framing the sole issue as whether the partial revocation "was in accordance with law and/or

supported by substantial record evidence where the revocation was premised on a separate rate

determination that is void as a matter of law" DSMC Rule 56.2 Br. at 1.  The motion was predicated

on the argument that the litigation of the 09-00511 case had effectively replaced Commerce's

revocation decision as a matter of law, and that the matter should be immediately remanded for

reconsideration.

Subsequently, over the DSMC's objection, this matter was stayed pending a final

decision on the appeal of the 09-00511 case, and on October 24, 2014, the Court of Appeals for the

Federal Circuit issued its decision sustaining the administrative redetermination of the ATM entity's

ineligibility for separate rate status. *Advanced Technology &Materials Co. v. United States*, 581 Fed.

Appx. 900 (Fed. Cir. 2014).

Because that decision affected the DSMC's challenge to an issue here that is separate

from the adverse WTO decision, the implementation of the USTR's instructions with respect thereto,

and the partial revocation that occurred in consequence, Commerce, in the matter at bar, filed on

April 17, 2015 a motion for voluntary remand pursuant to USCIT Rule 7(b) to re-evaluate its

separate rate determination and reconsider its section 129 determination to revoke the antidumping

duty order with respect to the ATM entity in light of the appellate decision.  ECF No. 50.

By way of response, on May 1, 2015, ATM filed a motion to dismiss for lack of

subject matter jurisdiction or for failure to state a claim upon which relief may be granted, arguing

that the complaint fails to allege that Commerce acted contrary to law or without a basis of

substantial evidence on the record with regard to implementing the instructions of the USTR

regarding the WTO decision:

> DSMC . . . seeks to have this Court ignore the instructions of the USTR (and possibly the WTO decision while adding in evidence not before the WTO Panel or on the record here).  There is no statutory basis cited for revoking the instructions of the USTR to Commerce without finding that those instructions are contrary to law.  Indeed, the USTR instructions are not reviewable under section 3538.

Def-Ints' Mem. in Support of Mot. to Dismiss at 1.

The defendant takes the "awkward" step of joining the DSMC in opposing the motion to dismiss, arguing that it cannot concur in ATM's arguments.  Def's Resp. in Opp. to Def-Ints' Mot. to Dismiss at 1; *see also* Pl's Opp. to Def-Ints' Mot. to Dismiss.

Also, on June 24, 2015, Commerce filed a letter in consolidated court number 09-00511 notifying that the preliminary injunction order in that case enjoined liquidation "pending a final and conclusive decision in this litigation and any appeals", that that case was now final, that the preliminary injunction has dissolved by its own terms, that Commerce can now liquidate the entries subject to that case, that the entries that can be liquidated include those that are subject to the suit at bar, that Commerce interprets 19 U.S.C. §1673d(c)(2) as governing a "negative determination" "such as the one Commerce made as part of its section 129 proceedings" and that liquidation of these entries is required by statute, and that Commerce is aware of no authority that permits continuation of suspension of liquidation of the post-section-129 entries entered on or after March 22, 2013, the date of revocation.  *See* Consol. Ct. No. 09-00511, ECF No. 144 (Mar. 28, 2013) ("Defendant's Notice").

Therefore, on June 25, 2015, the DSMC moved for and obtained a temporary restraining order against liquidation of the post-section-129 entries, and it has also moved to convert that TRO into a preliminary injunction during the pendency of the litigation.  ATM opposes granting

preliminary injunction, arguing that the DSMC's motion is untimely and does not meet the legal

standards therefor, and that the court will not lose jurisdiction in the absence of injunction.

   The motions are addressed sequentially, as follows.

II. <em>Motion to Dismiss</em>

   In its motion to dismiss, ATM argues that this court lacks subject matter jurisdiction

to consider DSMC's challenge to Commerce's final determination under section 129 of the URAA,

and that even if subject matter jurisdiction exists the DSMC has failed to state a claim upon which

relief may be granted.  ATM characterizes the DSMC's complaint as

> requesting this Court to add facts that were not before the WTO panel, or on the
> record of the 129 determination, to find that the WTO panel decision is a nullity, to
> ignore the instructions of the USTR to Commerce pursuant to statute, to force
> Commerce to make a determination that is not authorized by the request and
> implementation language provided by the USTR, and to do so without the explicit
> authorization of the USTR, which is the agency that is given the authority to make
> request determinations and finally determine whether any 129 determination should
> implemented.

Def-Int's Mot. to Dismiss at 11.  In short, ATM argues the complaint amounts to "a collateral attack

on the WTO panel decision" and "an end run around the statutory authority of the USTR" seeking

"for relief that cannot be granted in the absence of instructions from the USTR" under the provisions

of 19 U.S.C. § 3538 (b).  *Id.*  ATM argues the statutory authority and the review process by this court

for determinations of Commerce made under 19 U.S.C. § 1673 and the statutory authority of URAA

section 129 determinations, 19 U.S.C. §3538 (b), are "distinct procedures and provide distinct

jurisdictional authority pursuant to 19 U.S.C. §1516a" and that, as a result, the DSMC's complaint

fails to assert any claims cognizable under 19 U.S.C. §3538 (b) but instead asks for reversal of the

revocation determination as if the section 129 determination had been made pursuant to 19 U.S.C.

§1673. *Id*. at 11-12. "Were DSMC to be successful in obtaining jurisdiction here, the entire statutory

scheme for section 129 cases will be undermined, with Commerce able to ignore the authority of the

USTR to implement WTO panel decisions, and with Commerce taking over as the lead agency for

making decisions on implementation of WTO panel decisions." *Id*. at 12.

ATM further argues that even if, *arguendo*, subject matter jurisdiction is proper here,

DSMC's complaint fails to state a claim upon which relief may be granted because Commerce's

authority to issue a new determination pursuant to the section 129 only extends to the scope of the

WTO findings at the direction of the USTR, and that even if Commerce can issue a "new" section

129 determination as requested by DSMC, the determination would have no legal effect unless and

until the USTR directs Commerce to implement that determination in whole or in part, which is

relief that exceeds the scope of the statute. *Id*. at 12-13.

DSMC responds that jurisdiction is proper here pursuant to 28 U.S.C. §1581(c), as

it is challenging the determination to revoke the antidumping duty order on diamond sawblades from

the PRC as to the collapsed ATM entity.  Complaint, (May 24, 2013) at ¶2, ECF No. 9.  In order to

preserve the full relief to which it is entitled from its cause of action in *Advanced Technology*

*&Materials Co. v. United States*, Consol. Ct. No. 09-00511, the DSMC instituted this suit.  And

because the DSMC prevailed on that challenge (to the LTFV investigation with respect to the ATM

entity even in the absence of zeroing methodology), then the revocation cannot lawfully stand.

DSMC's brief on its motion for judgment expounds on the fact that the calculations that resulted in

revocation of the order as to the ATM entity were based on erroneous findings that led to an

erroneous original LTFV determination, *see*, *e.g.*, DSMC 56.2 Br. at 11, and since those findings

were judicially found unsupportable and have since been administratively disavowed as well, *see id*.,

DSMC asserts that jurisdiction over the instant matter is proper and it should be remanded for further

consideration.

    A.  The Court Has Subject Matter Jurisdiction Over this Action

        Section 129 of the URAA provides a process whereby the United States may alter or

amend the results of past antidumping duty determinations in response to adverse WTO decisions.

19 U.S.C. §3538. The statute provides that, where an adverse WTO decision is rendered concerning

an antidumping duty determination issued by Commerce, the USTR may direct Commerce to make

a new determination that would render Commerce's original determination "not inconsistent" with

the WTO decision. 19 U.S.C. §3538(b)(2). After Commerce makes its new determination, USTR

may then direct the agency to implement the new determination. 19 U.S.C. §3538(b)(4).

        In this instance, Commerce has implemented, and therefore fully complied with, the

USTR's instruction -- by eliminating zeroing from its calculation.  Nothing concerning the matter

at bar will affect or alter that implementation.  Moreover, the USTR did not explicitly instruct

Commerce to "revoke" the antidumping duty order, "implementation" of the USTR's instruction

simply resulted in recalculation of *de minimis* margin for the collapsed ATM entity.  Commerce

determined to revoke of its own accord, pursuant to 19 U.S.C. §§ 1673b(b)(3) and 1673d(a)(4) and

19 C.F.R. §351.204(e), (if the antidumping duty margin for a respondent in an antidumping duty

investigation is calculated at less than two percent, the respondent is to be excluded from any

resulting order), as the logical extension of "implementing" the adverse WTO panel's findings,

pursuant to section 129 of the URAA, based on the record available *at that time*.[2]  That decision, to

revoke, is a separate matter, albeit one that is bound to "implementation" of the relevant adverse

WTO panel's finding concerning zeroing.  *See*, *e.g.*, Slip Op. 13-137 (Nov. 3, 2011) at 11

("*Commerce* has determined that revocation of the Order will be necessary upon implementation of

its section 129 determination") (italics added).

In its motion to dismiss for lack of subject matter jurisdiction, ATM's objection

appears to be three-fold.  *See* Def-Int's Mot. to Dismiss at 13-18.  First, it argues that 19 U.S.C.

§1516a and 19 U.S.C. §3538 only permit challenges to Commerce's failure to issue section 129

determinations "not inconsistent" with adverse WTO panel reports, that the USTR's instructions in

that regard are not reviewable, and that there has been no allegation that "Commerce failed to follow

such instructions properly pursuant to its statutory obligations."  *Id*. at 16; *see id*. at 14-18.  Second,

ATM argues that DSMC has failed to challenge "th[e] section 129 at the time it was made,'' *i.e.*, on

the basis of the record before Commerce.  *Id*. at 14-15.  Finally, ATM appears to argue that

substantive review is foreclosed by reason of USTR's role in implementation.  *Id*. at 14-18.  None

of these arguments, however, establishes that this court lacks jurisdiction over DSMC's action.

---

[2]  The contested revocation was the result of similarly "implementing" the adverse decision
of the WTO telling these United States what this sovereign country had "agreed to", in effect, with
regard to the Antidumping Agreement, the WTO panel having decided that Commerce had erred,
once again, in the less-than-fair-value ("LTFV") investigation into alleged dumping of subject
merchandise when Commerce again applied its long-established practice of "zeroing" to the ATM
entity respondent.  *See* 19 U.S.C. §3538(b)(2); *see also Certain Frozen Warmwater Shrimp From
the People's Republic of China and Diamond Sawblades and Parts Thereof From the People's
Republic of China*, 78 Fed. Reg. 18958 (Mar. 28, 2013) (notice of implementation of section 129
determinations and partial revocation of the antidumping duty orders) ("final results") and Panel
Report, *United States -- Anti-Dumping Measures on Certain Shrimp and Diamond Sawblades from
[the People's Republic of] China*, WT/DS422/R (June 8, 2012).

1. The Statute Provides for Substantive Challenges to Section 129 Determinations

ATM begins by arguing that, although 19 U.S.C. §1516a authorizes challenges to, and judicial review of, determinations made under 19 U.S.C. §3538, the latter statute is structured such that only Commerce's *failure* to issue or failure to implement a determination may be appealed. Def-Int's Mot. to Dismiss at 14. Both the DSMC and the defendant counter that Congress expressly provided for judicial review of Commerce's determinations under 19 U.S.C. §3538. The court finds that ATM's reading cannot be squared with the plain language of either statute, the legislative history of section 129, or with the courts' consistent treatment of that statute as providing for challenges to the "factual findings" and "legal conclusions" incorporated into section 129 determinations.

Section 129 of the URAA, 19 U.S.C. §3538, describes the process to be followed when an adverse foreign trade organization (WTO) decision implicates a determination issued by Commerce under the trade laws. The statute first obliges consultations by Commerce, Congress, and USTR regarding the matter. 19 U.S.C. §3538(b)(l). It then states that "the administering authority shall, within 180 days after receipt of a written request from the Trade Representative, issue a determination in connection with the particular proceeding that would render the administering authority's action . . . not inconsistent with the findings of the panel or the Appellate Body." 19 U.S.C. §3538(b)(2). The statute then directs USTR to further consult with Commerce and relevant congressional committees. 19 U.S.C. §3538(b)(3). Finally, the statute provides that, after such consultations, USTR may instruct Commerce to implement the determination that Commerce made pursuant to subsection (b)(2) of the statute. 19 U.S.C. §3538(b)(4).

As for judicial review thereof, the Tariff Act of 1930, as amended, plainly provides that such review may be sought with respect to "notice of the *implementation* of *any* . . . determination by the administering authority or the Commission under section 3538 of this title". 19 U.S.C. §1516a(a)(2)(A)(III) and (B)(vii) (italics added). The only "determination" referenced in section 3538 is a determination made by Commerce (or the ITC) in response to USTR's request, 19 U.S.C. §3538, and the plain language of the statute is at odds with ATM's reading of it.

The standard of review also supports a broader reading than that argued by ATM. By expressly authorizing this court to consider whether a section 129 determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law," Congress contemplated more than a review of a failure to make or implement a determination. 19 U.S.C. §1516a(b)(l)(B(i). And the statute clearly contemplates review of the substance upon which determinations under 19 U.S.C. §3538 are based (*i.e.*, its "factual findings" and "legal conclusions") in the "implementation" thereof. 19 U.S.C. §1516a(a)(2)(A)(III).

ATM's interpretation is also at odds with the legislative history of section 129 of the URAA, which confirms, in accordance with the plain language of 19 U.S.C. §1516a and 19 U.S.C. §3538, that Congress intended to provide for substantive judicial review of Commerce's "section 129" determinations. The Statement of Administrative Action ("*SAA*") accompanying the URAA states that the section "amends section 5l6 A of the Tariff Act of 1930 to provide for review by the courts . . . of new Title VII determinations made by Commerce . . . under section 129 that are implemented." H.R.Doc. No. 103-316, vol.1 at 1026 (1994), reprinted in 1994 *U.S.C.C.A.N.* 4040, 4314. Confirming that the intended review was meant to be substantive -- in other words, to reach

the legal and evidentiary underpinnings of the determinations under challenge -- the legislative

history acknowledges that there might be instances in which "it is possible that Commerce . . . may

be in the position of simultaneously defending determinations in which the agency reached different

conclusions". *Id*. at 1027, 1994 *U.S.C.C.A.N.* at 4314. In context, this implies that appeals of

"determinations" would result in the agency defending its findings in an initial determination on the

one hand, and on the other hand defending a section 129 determination meant to bring the initial

determination into compliance at the same time or in separate proceedings.

Moreover, the *SAA* notes that in such cases, the courts are not expected to forego

substantive review of either the section 129 determination or the pre-existing determination that it

alters, but to "be sensitive to the fact that . . . multiple permissible interpretations of the law and the

facts may be legally permissible in any particular case." *Id*. This further indicates that Congress

intended the courts to review the substance of section 129 determinations in accordance with the

standard of review provided for in 19 U.S.C. §l516a(b)(1)(B)(i), *i.e.*, for substantial support in the

record and for otherwise being consistent with law. Indeed, if ATM's reading were correct, and only

a failure to issue or implement a section 129 determination could be challenged, it is difficult to see

how Commerce would ever be placed in the position of "simultaneously defending determinations

in which the agency reached different conclusions" as, at most, the agency would be simultaneously

defending its initial determination and a subsequent failure to issue or implement a section 129

determination. *Cf*. Def. Opp. to Mot. to Dismiss at 6 (Commerce "would never be in a position of

defending 'different conclusions' if -- as ATM suggests -- the actual conclusions Commerce reached

as part of its section 129 determination could never be challenged").

Finally, ATM's understanding of 19 U.S.C. §3538 as only permitting challenges to a failure to make or implement a section 129 determination is not in keeping with the manner in which the courts have actually treated challenges to section 129 determinations. Rather than limiting their consideration to the question of whether Commerce failed to make or implement a determination, the courts have engaged with the "factual findings" and "legal conclusions" underpinning the substance of the determinations themselves. *See*, *e.g.*, *Wheatland Tube Co. v. United States*, 38 CIT ___, 26 F. Supp. 3d 1372 (2014) (remanding for further explanation of the logical underpinnings of the agency's redetermination, pursuant to section 129, of a double-counting offset regarding the trade orders on Chinese circular welded carbon quality steel pipe). Indeed, ATM does not point to any case in which a court has followed ATM's interpretation of the statute as permitting only narrow challenges to a failure to issue or implement a determination.

In sum, ATM's interpretation of 19 U.S.C. §3538 is at odds with the plain language of that statute, with its legislative history, and with judicial treatment, in practice, of section 129 appeals. Thus, ATM's first objection to the court's exercise of jurisdiction is without merit.

   2. Jurisdiction Is Unaffected by Timing of Commerce's
      Disavowal of Its Original Calculations

ATM's next argument is likewise unpersuasive. ATM complains that rather than challenging "the section 129 at the time that it was made," DSMC's complaint references "later developments not on the record of the section 129 case." Motion to Dismiss at 14. As such, ATM avers, "DSMC's request for relief is outside the scope of the section 129 determination" most particularly because it goes beyond "the specific findings that WTO found to be inconsistent with U.S. international obligation." *Id*. at 15.

As previously noted, this court reviews Commerce's section 129 determinations to determine whether they are supported by substantial record evidence and otherwise in accordance with law.  It is with this latter area of review that DSMC's complaint is particularly concerned.  *See* 19 U.S.C. §1516a(b)(l)(B)(i).  As explained in DSMC's opening brief, pages 6-7, Commerce's section 129 determination was based on the assumption that the 2.82% antidumping duty margin originally calculated for the ATM entity was valid under U.S. law.  *See*, *e.g.*, Revocation Notice, 78 Fed. Reg. at 18958 n.3, PDoc 25. DSMC contends that at the time, Commerce was also aware that the margin might not, in fact, be valid, as the issue of whether the entity was eligible for an individual margin calculation (as of the time the section 129 determination was issued) had been twice remanded, *see*, *e.g.*, Order, *Advanced Technology & Materials Co. v. United States*, CIT Consol. Ct. No. 09-511, Slip Op. 12-147, ECF No. 124 (Nov. 30, 2012), and that "very soon" after the section 129 determination recalculated the ATM entity's margin as *de minimis*, Commerce replaced its original calculations, as a matter of law, with a finding that subjected the entity to the PRC-wide rate. *See* Second Remand Results, *Advanced Technology & Materials Co., Ltd., et al. v. United States*, CIT Consol. Ct. No. 09-115, ECF No. 148 (May 6, 2013).  This remand determination was subsequently upheld through appeals. *See*, *e.g.*, CAFC Rule 36(a) (judgment); *Advanced Technology & Materials Co. v. United States*, CAFC Ct. No. 14-1154 (Oct. 24, 2014).  ATM appears to argue that the facts of record upon which the original section 129 determination rests are "written in stone" and cannot be altered, *e.g.*, Def-Int's Reply on Mot. to Dismiss at 9 ("the information on that issue is not on the record of this review"), but that is an incorrect statement of law, regarding the state of the record, and the judicial and administrative authority to reopen it.  The Federal Circuit

has previously held that "deference is not owed to a determination that is based on data that the agency generating those data indicates are incorrect. The law does not require, nor would it make sense to require, reliance on data [that] might lead to an erroneous result." *Borlem S.A. -Empreedimentos Industriais v. United States*, 913 F.2d 933, 937 (Fed. Cir. 1990). *See also Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1278 (Fed. Cir. 2012). The section 129 determination, as it currently stands, is based on data -- the original margin calculations -- that Commerce has itself determined are incorrect, and because it is based on "material and significant inaccurate facts," remand of the section 129 determination is appropriate.

Contrary to ATM's implications, the fact that the agency disavowed its original calculations only after issuing the section 129 results does not deprive this court of jurisdiction. ATM protests that count 14 is the only part of DSMC's complaint that raises a plausible cause of action but it is one that is based on "actions" (or facts) that occurred subsequent to the instructions issued by USTR to implement the adverse WTO panel's decision and were not on the record of the section 129 "or reviewed in the section 129" determination, Def-Int's Reply to Mot. to Dismiss at 2-3, but the court has previously found that the lawfulness of an agency determination may hinge upon the outcome of separate litigation, as in *Borlem*. *Diamond Sawblades Mantfacturers Coalition v. United States*, Slip Op. 13-130 (Oct. 11, 2013) at 6 (where the original results upon which a section 129 determination is based are themselves under challenge, "[a]dministrative revocation pursuant to a section 129 determination . . . can only be regarded as interlocutory, *i.e.*, provisional, and dependent upon the outcome of [the challenge to the LTFV results]"). Similarly, the court has also found that a revocation, pursuant to an antidumping duty administrative review, of an order as

to a respondent that had obtained three consecutive zero or *de minimis* margins was contingent upon the outcome of litigation over earlier reviews. *Elkem Metals Co. v. United States*, 31 CIT 672, 676 (2007) (acknowledging that the disposition of the matter before the court was contingent upon whether the Department's  determination in an earlier proceeding was sustained).  And finally, the Federal Circuit has previously held, in similar circumstances, that:

> a reviewing court is not precluded . . . from considering events which have occurred between the date of an agency (or trial court) decision and the date of decision on appeal. Where such intervening events are properly brought to the attention of the reviewing court, that court may rely on that occurrence and typically will remand for consideration by the decision-maker.

*Borlem*, 913 F.2d at 939 (citation omitted). Thus, the fact that the agency released its second remand results subsequent to its section 129 determination does not deprive this court of jurisdiction or otherwise foreclose this court from remanding the revocation of the antidumping duty order for reconsideration.

Lastly in this regard, ATM argues that DSMC's "request for relief is outside the scope of the section 129 determination," in that the complaint does not "address[ ] solely the issue of removing zeroing" from the calculation of the ATM entity's LTFV margin. Def-Int's Motion to Dismiss at 15-16; *see also* Def-Int's Reply to Mot to Dismiss at 3.  Commerce and DSMC take the position, essentially, that the section 129 proceeding was initiated in order to re-determine the ATM entity's margin and that the DSMC's challenge is to the "factual findings" and "legal conclusions" that underpin the agency's re-determination at that time but which have subsequently been determined invalid.  Accordingly, the DSMC states that it is utilizing its rights of appeal over the section 129 determination for exactly the reason that Congress intended when it provided that right

of appeal: to ensure that, in rendering decisions consistent with the WTO Agreements, Commerce

did not issue new determinations that were unsupported by substantial record evidence or otherwise

not in accordance with U.S. law.

ATM responds that factual findings can of course be reviewed by the court based on

the substantial evidence standard, but it argues that "factual findings not on the record, and not in

the instructions from USTR, but which 'underpin' the determination were not legally before

Commerce and cannot be reviewed consistent with the jurisdictional statute."  In so arguing, ATM

contends that the substantive review "is whether substantial evidence on the record supported the

*zeroing* determination, and nothing more."   Def-Int's Reply to Mot. to Dismiss at 5 (ATM's

emphasis).  ATM argues that if any "underpinning" fact can be brought into an appeal, it creates a

"nightmare scenario" for all appeals of dumping cases and that Commerce's position is "inconsistent

with the statutory structure" because if the court has jurisdiction to review "any and all" factual

findings once the section 129 determination is decided, then there would be no need for the

jurisdictional statute to separate the various reviewable determinations into separate bases for

jurisdiction.  From this, ATM argues that if the underpinning of all legal and factual findings are at

issue and not just the record of the determination being appeal, then the specific "section 3538 of this

title" at 19 U.S.C. §1516a(a)(2)(B)(vii) is superfluous:

> In other words, based on Defendant's argument and Plaintiff's theory of the case,
> Plaintiff can re-litigate any issue from any other review that was the original basis for
> the WTO findings in the context of the section 129 determination, even if it was not
> before Commerce in its section 129 determination.  Here, the issue of separate rates
> was not before Commerce because it was not in the instructions from USTR.  But
> now, the Government concedes that the scope of the instructions from USTR can be
> ignored and Commerce can set its own scope as to what should be implemented.

*Id.* at 6-7.

However, this argument overlooks that DSMC's suit here is intended to challenge the partial revocation aspect of *Implemented PRC Section 129 Determination*, which is the legal conclusion Commerce reached in that determination based upon the posture of the investigation at that time.  DSMC is not attempting to "re-litigate" the separate rates issue "not before Commerce because it was not in the instructions from USTR", *see id*. at 6; DSMC is seeking correction of the legal conclusion on revocation in the section 129 determination in order to comport with the final decision on the investigation.

ATM points to *ThyssenKrupp Acciai Speciali, Terni S.P.A. v. United States*, 33 CIT 200, 602 F. Supp.2d 1362 (2009), *aff'd*, 603 F.3d 928 (Fed. Cir. 2010) for support, but that case is inapposite, if not the inverse of the matter at bar.  *ThyssenKrupp* involved a plaintiff's attempt to revive -- in the context of a section 129 proceeding that took place in 2007 -- its litigious challenge to a ministerial allegation that it had abandoned eight years prior, to wit, that the amended final results of the original investigation into its subject merchandise did not indicate proper correction or incorporation thereof.[3]  *See Acciai Speciali Terni S.P.A. v. United States*, 25 CIT 245, 142 F.Supp.2d 969 (2001); *see also* Order of Dismissal, Court No. 99-08-00551, ECF. No. 91 (Jan 23, 2002).  Unlike the finality of the original investigation sought to be amended via the section 129 determination that was considered in *ThyssenKrupp*, finality on the diamond sawblades from the

---

[3]  *Cf. Implementation of the Findings of the WTO Panel in US-Zeroing (EC): Notice of Determination Under Section 129 of the Uruguay Round Agreements Act: Antidumping Duty Order on Stainless Steel Sheet and Strip in Coils from Italy*, 72 Fed. Reg. 54640 (Sep. 26, 2007), *with Final Determination of Sales at Less than Fair Value: Stainless Steel Sheet and Strip in Coils from Italy*, 64 Fed. Reg. 30750, 30757 (June 8, 1999), *amended*, 64 Fed. Reg. 40567, 40570 (July 27, 1999).

PRC investigation only recently occurred, finality of the challenged section 129 determination at bar

has not occurred, and the applicability of the former to the latter is a live issue.  DSMC simply seeks,

properly, to have consistency of results through remand of the latter.

As such, Commerce's position is consistent with *ThyssenKrupp*, wherein it argued,

as ATM points out, "that section 129 determinations are limited to the specific issue found

inconsistent with the U.S.'s WTO obligations".  Def-Int's Reply on Mot. to Dismiss at 7, referencing

*ThyssenKrupp*, 602 F. Supp. 2d at 1362.  The specific inconsistency Commerce was instructed to

address and implement in the challenged section 129 determination at bar was the issue of zeroing.

The logical *consequence* thereof, as interpreted by Commerce at the time, was the further

determination of partial revocation, which was not improper at the time, and ATM does not go so

far as to argue (against its own interest) that the revocation was unlawful in accordance with

*ThyssenKrupp*.  ATM's entitlement to a separate rate was not an adjudicated factual finding or legal

conclusion that was made as part of the section 129 determination, and that fact or conclusion,  upon

which the revocation rests, has by now been adjudicated inapposite and finality has attached to it.

In other words, the *status quo* of the fact or conclusion underpinning the determination to revoke has

changed.  ATM's second objection to the court's exercise of jurisdiction is without merit.

3.  Jurisdiction is Not Dispossessed By Reason of USTR's Role in Implementation

ATM's third objection to jurisdiction appears premised on the "political question"

doctrine, pursuant to which the judicial branch is barred from "reviewing the substance of policy

decisions that the U.S. Constitution commits to the discretion of the legislative or executive branches

of government."  *Almond Bros. Lumber Co. v. United States*, 36 CIT ___, Slip Op. 12-51 (Apr. 19,

2012) at 7.  ATM alleges that because Commerce lacks statutory authority to implement a section

129 determination without direction from USTR, and because it is USTR that in fact directed the

implementation of the determination, USTR is the entity over which  jurisdiction must be asserted

in order to grant the DSMC relief.  Def-Int's Mot. to Dismiss at 16. Moreover, ATM alleges that a

challenge to USTR's directions is not cognizable under 19 U.S.C. §3538,  and that even if it were,

the executive (branch wide) is to be afforded latitude over "the discretionary authority of the

President's trade negotiations in the realm of foreign relations" *Id*. at 17.  In effect, ATM argues that

because implementation of the section 129 determination was within the "sound prosecutorial

discretion" of the executive branch, the court may not review it or require Commerce in any way to

reconsider or amend it.

       The difficulty with this argument is that Congress expressly provided for judicial

review of section 129 determinations. 19 U.S.C. §1516a(a)(2)(A)(III) & (B)(vii).  Such review

clearly covers section 129 determinations regardless of the fact that USTR has instructed their

implementation.  *See* 19 U.S.C. §1516a(a)(2)(A)(III) (stating that time to appeal dates from notice

of implementation); *see also SAA* at 1026-27, 1994 *U.S.C.C.A.N.* at 4314 (noting that the URAA

"provide[s] for review by the courts . . . of new Title VII determinations made by Commerce or the

ITC under section 129 that are implemented" and confirming that "implemented determinations may

be appealed").  Indeed, such review only covers section 129 determinations that USTR has instructed

be implemented.  *See id.*  As such, there is no indication in the statute or the legislative history that

Congress understood USTR's role in directing implementation to bar judicial review, or as otherwise

insulating section 129 determinations from remand -- and potential adjustment -- for failure to

comply with the standards provided for in 19 U.S.C. §1516a(b)(l)(B(i). Were ATM's view of the law

accepted, the statute would authorize review that could not result in anything other than an "advisory

opinion," by reason of the political nature of USTR's implementation instructions, which is not what

Congress contemplated.

Nor is that view how the courts have understood the scope of their review of section

129 determinations.  In considering appeals of Commerce's determinations issued under section 129,

courts have had to engage, obviously of necessity, with the "factual findings"and "legal conclusions"

underpinning the substance of the determinations themselves, and have evidently not found

themselves barred from doing so by reason of USTR's role in implementation.  *See*, *e.g*, *Wheatland

Tube Co.*, 38 CIT at ___, 26 F. Supp. 3d at 1372-89.  This court finds no merit to ATM's argument

that "*any* change to the original [section 129] determination . . . must be reviewed by USTR and

Congress".  Def-Int's Reply on Mot. to Dismiss at 8 (court's italics), citing 19 U.S.C. § 3538(b)(3)

and (4).  Remand will not disturb the previous "implementation" by Commerce of the adverse WTO

panel's findings.  For these reasons, ATM's third and final objection to the court's exercise of

jurisdiction must therefore also fail.

B.  DSMC Has Stated a Claim Upon Which Relief May Be Granted

ATM also argues that the DSMC has failed to state a claim upon which relief may

be granted.  Def-Int's Mot. to Dismiss at 18-19.  In making this argument, ATM largely relies on the

same arguments that undergird its claim that the court lacks jurisdiction.  In particular, ATM argues

that "there has been no allegation that there was any failure of Commerce at the time that the Section

129 determination was issued, and that "no allegations of error against the USTR have been made."

*Id*. at 18.  These statements are unpersuasive as to DSMC's alleged failure to state a claim upon which relief may be granted.

As discussed above, DSMC's challenge relates to the fact that the section 129 determination is based on "data that the agency generating those data indicates are incorrect." *Borlem*, 913 F.2d at 937.  As such, it is irrelevant to the matter at bar that Commerce disavowed the basis for its section 129 determination outside of the section 129 determination itself.  In the context of the Korean diamond sawblades investigation, the court previously noted that Commerce's revocation of the order was "interlocutory, *i.e.*, provisional and dependent upon the outcome" of the challenge to the LTFV results, *Diamond Sawblades Manufacturers Coalition*, 37 CIT ___, ___, Slip Op. 13-130 at 6, and here continues to stand by that observation.  The final LTFV results indicate that the revocation was erroneous, as it was based on inaccurate data -- indeed, on data that Commerce itself has disavowed.  As such, DSMC avers that the section 129 determination is not in accordance with law, *per* 19 U.S.C. §1516a(b)(l)(B(i), and that this unlawfulness can be remedied -- just as it was in *Borlem*[4] -- through "remand for consideration by the decision-maker" and subsequent judicial evaluation of the remand results for compliance with 19 U.S.C. §1516a(b)(l)(B(i)'s standards.  *Borlem*, 913 F.2d at 939.

There is also no merit to ATM's argument that no relief can be granted because DSMC has not made "allegations of error against the USTR." Def-Int's Mot. to Dismiss at 18.  The statute expressly authorizes judicial review of the factual findings and legal conclusions on which

---

[4]  In *Borlem*, the court remanded an ITC determination in light of an amended final LTFV determination Commerce had issued.  *Borlem SA. -Empreedimentos Industriais v. United States*, 13 CIT 535, 541, 718 F. Supp 41, 45 (1989). To do otherwise would have allowed a determination to stand that was, in fact, based upon "material and significant inaccurate facts". *Id*.

implemented determinations are based, and to the extent that USTR directs implementation of a

determination that is not in accordance with law or unsupported by substantial evidence, the statute

contemplates that interested parties may challenge that determination directly. *See*, *e.g.*, 19 U.S.C.

§1516a(a)(2)(A)(III) and (B)(vii). There is no requirement under the law to allege separately that

USTR "erred in directing implementation," and to the extent ATM argues that Commerce cannot

be required to issue a determination "inconsistent" with the WTO panel's findings,[5] the relief DSMC

seeks through this suit is not inconsistent with those findings. As stated above, the WTO panel only

addressed the fact that Commerce impermissibly applied zeroing methodology in determining the

ATM entity's margin, whereas the separate rate redetermination DSMC sought, through litigation

that finally concluded after section 129 determination, does not implicate zeroing in any way.

Finally, ATM's argument that Commerce would lack authority to implement any new

determination issued pursuant to remand without instructions from USTR does not mean that DSMC

has failed to state a claim. Def-Int's Mot. to Dismiss at 19. In a recent *Wheatland Tube* case,

Commerce reconsidered its section 129 determination and reached different results on remand by

denying an adjustment previously granted. *See Wheatland Tube Co. v. United States*, CIT Consol

Ct. No. 12-00298, ECF No. 70 (Apr. 27, 2015) (redetermination pursuant to court remand); *see also*

*Wheatland Tube Co.*, 38 CIT at ___, 26 F. Supp. 3d at 1372-89. In reaching those results on remand,

Commerce did not claim that it could not reach such results in the absence of direction from USTR,

or that the results would have no legal effect in the absence of such direction, *see id.*; rather, it

complied with the court's remand order and replaced, as a matter of law, its original section 129

---

[5] *See* Def-Int's Mot. to Dismiss at 19.

determination with a substantively different determination.  *Id*.  Likewise, no valid reason has been

offered here for concluding that Commerce lacks authority to comply with the orders of the court,

or that such orders can only result in a redetermination without legal effect.  Rather, Congress

provided this court with the jurisdiction to ensure that section 129 determinations are supported by

substantial record evidence and otherwise in accordance with law, and to require their alteration

where they are not.  19 U.S.C.§l516a(a)(2)(A)(III) & (B)(vii); *see also* 19 U.S.C. §1516a(a)(2)

(A)(III).  This jurisdictional power is not conditioned upon USTR's approval.

### III.  *Motion for Preliminary Injunction*

Turning to the motion for preliminary injunction, DSMC seeks pursuant to USCIT

Rules 7, 56.2(a), and 65(a) to enjoin the defendant, together with its delegates, officers, agents,

servants, and employees of Commerce and the United States Bureau of Customs and Border

Protection ("Customs"), pending a final and conclusive court decision in this litigation, from causing

or permitting liquidation of unliquidated entries made on or after March 22, 2013 of diamond

sawblades and parts thereof from the PRC that were produced and/or exported by the ATM entity

and/or any of its members, pending a final and conclusive final judicial resolution of this action.  It

would remain in effect during the pendency of this litigation (including all relevant remands and

appeals) in order to maintain the *status quo*, to preserve the jurisdiction of this court, to prevent relief

sought by DSMC from being mooted, and to ensure the orderly administration of the Order.

USCIT Rule 56.2(a) contemplates the filing of a motion for preliminary injunction

later than 30 days after service of a party's complaint where "good cause" is shown.  Good cause

exists in this case.  Until recently, the ATM entity entries at issue were covered by a preliminary

injunction issued in CIT Consol. Court No. 09-00511 (DSMC's appeal of Commerce's LTVF

determination) that prevented their liquidation.  *See Advanced Tech. & Materials Co., Ltd. v. United*

*States*, Court No. 09-00511, Slip Op. 13-42 (Mar. 28, 2013).  However, because the decision in that

litigation and the appeal therefrom is now final and conclusive, the injunction has dissolved by its

own terms, and since Commerce has explicitly stated that it "will shortly be issuing instructions to

lift suspension of [the ATM entity's] post-section 129 entries and to liquidate those entries",

Defendant's Notice Concerning the Status of Previously-Enjoined Entries, CIT Court No. 09-00511,

ECF No. 179 (June 24, 2015) ("Defendant's Notice"), entries of diamond sawblades and parts

thereof produced or imported by the ATM entity have thereby been in imminent danger of

liquidation, without the assessment of antidumping duties, unless liquidation is suspended (or rather

if the suspension of liquidation is not continued). A preliminary injunction is now required in order

to preserve the *status quo* and prevent the relief sought by DSMC from being mooted while this issue

is litigated before the court.

      Preliminary injunctions have been issued in similar circumstances.  While "[n]either

this court's rules nor case law defines 'good cause' as it applies in Rule 56.2(a)," in other contexts,

courts have found the term to generally mean, "that good reason must exist and that relief must not

unfairly prejudice the opposing party or the interests of justice."  *Carpenter Tech. Corp. v. United*

*States*, 31 CIT 1, 4 (2007) (quoting USCIT R. 56.2(a)).  Recently, the court issued a preliminary

injunction even though the plaintiffs' motion in that case was filed more than 30 days after service

of the complaint. *Zhejiang Native Produce & Animal By-Products Import & Export Corp. v. United*

*States,* 39 CIT ___, 61 F. Supp. 3d 1358 (2015). The court found that good cause existed to accept

the motion, because, as in this case, the entries at issue had previously been enjoined from liquidation by means of an injunction in place in another appeal. *See id.* 39 CIT at ___, 61 F. Supp. 3d at 1365. DSMC in this case similarly asks that the court find that its motion for preliminary injunction is timely made for purposes of USCIT Rule 56.2(a).  The court so finds, on the basis of Defendant's Notice filed in consolidated court number 09-00511.

In order to prevail on a motion for a preliminary injunction, the moving party must show that: (1) without the requested relief, it will be immediately and irreparably injured; (2) the balance of hardships on the parties favors it; (3) success on the merits is likely; and (4) the public interest would be better served by granting the requested relief.  *See U.S. Association of Importers of Textiles & Apparel v. United States Department of Commerce*, 413 F.3d 1344, 1346 (Fed. Cir. 2005); *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed. Cir. 1983).  As discussed below, the criteria for issuing a preliminary injunction are satisfied here.

A.  Immediate and Irreparable Injury Will Result In the Absence of Injunctive Relief

Absent issuance of a preliminary injunction that continues the TRO's present enjoinder of liquidation, Commerce will instruct Customs and to liquidate the relevant entries, thereby depriving DSMC of its right to meaningful judicial review of the challenged section 129 determination.  Because Commerce's original (later-reversed) separate rate determination formed the legal premise for the section 129 recalculations, liquidation at such separate rate would be inconsistent with 19 U.S.C. §1516a(e) and not "in accordance with" the final and conclusive court decision in Court No. 09-00511, which sustained Commerce's finding of the ATM entity as ineligible for a separate rate.  DSMC would thus be immediately and irreparably harmed unless this

preliminary injunction is granted as, absent injunction, the relevant entries of the ATM entity's

diamond sawblades and parts thereof from the PRC will be liquidated and no dumping duties

assessed thereon, regardless of the court's final judgment in this action.

DSMC argues by this appeal that revocation of the antidumping duty order as to the

ATM entity is an incorrect disposition, as the 09-00511 litigation has confirmed, because had the

ATM entity been considered part of the PRC-wide entity initially, the margin for the ATM entity

would have received a margin of 164.09 percent without the use of "zeroing," and the order would

have not been revoked as to the ATM entity. *See* Slip Op. 13-42 at 5 ("[i]f DSMC prevails here, the

antidumping duty order will continue to apply to the ATM entity even in the absence of zeroing").

But if the ATM entity's entries are liquidated, that will moot DSMC's arguments as to these entries,

thereby denying a substantial portion of the relief that DSMC seeks.  This, in turn, would cause

irreparable injury to DSMC. *See id*. at 6-7 ("DSMC will suffer irreparable harm if entries are

liquidated without antidumping duties that may ultimately be determined owed as a result of this

litigation"); *Zenith Radio Corp.*, 710 F.2d at 811 ("the inability of reviewing courts to meaningfully

correct the review determination is irreparable injury that must be considered by the trial court");

*PPG Industries, Inc. v. United States*, 14 CIT 18, 21 (1990) (liquidation prior to the court's final

decision would constitute irreparable injury); *Qingdao Taifa Group Co. v. United States*, 32 CIT

1169, 1170 (2008) ("It has long been established that liquidation of entries after a final determination

of duties for a particular period, before the merits can be litigated, is sufficient harm"). If the ATM

entity's imports enter the United States duty-free, U.S. diamond sawblades manufacturers will be

denied a portion of the relief owed to them under the trade remedy laws, and they will experience

further serious and irreparable injury. In the absence of an injunction preventing liquidation, this

Court will not be able to provide meaningful relief for such imports.

   In addition to largely rendering moot the relief that DSMC seeks in this case,

liquidation of the ATM entity's entries would deprive DSMC of the relief it obtained in Court No.

09-00511 with regard to the ATM entity's receipt of the PRC-wide rate. Moreover, as the court

stated when granting the preliminary injunction in that case, "[a] final judgment in this action which

determines that the ATM entity was not entitled to a separate rate would be ineffective as to [the

ATM entity's] entries" if suspension of liquidation is lifted. Slip Op. 13-42 at 6.

   This remains true with respect to the matter at bar: liquidation would render

ineffective the final judgment and finding in CIT Court No. 09-00511 that the ATM entity was not

entitled to a separate rate, as well as any finding in the instant appeal that the antidumping duty order

was inappropriately revoked as to the ATM entity. Liquidation without imposition, and at a non-

PRC-wide rate of, antidumping duties would appear to be inconsistent with 19 U.S.C. §1516a(e),

as such liquidation would not be "in accordance with" the final and conclusive judicial determination

rendered in Court No. 09-00511. As such, the liquidation of the ATM entity's entries of diamond

sawblades and parts thereof from the PRC, while litigation regarding the Order (including regarding

the section 129 determination at issue in this case) is pending, would result in irreparable harm to

DSMC.

   Furthermore, the potential harm to DSMC continues to be immediate. *See*

Defendant's Notice at 3. As a result, "Commerce will shortly be issuing instructions to lift

suspension of [the ATM entity's] post-section 129 entries [*i.e.*, those that entered post-revocation

on or after March 22, 2013] and to liquidate those entries." *Id*. at 4. Thus, it is imperative that liquidation or issuance of instruction thereof continue to be enjoined.

B. The Balance of Hardships Favors DSMC

Balancing the hardships that each party would suffer necessarily requires this Court to determine which party would be most adversely affected by the decision to either grant or deny a preliminary injunction. *See Ugine-Savoie Imphy v. United States*, 24 CIT 1246, 1250 (2000). Here, any hardship to other parties that would be caused by a delay in liquidation is outweighed by the irreparable harm to DSMC that would occur if an injunction were denied. *See* Slip Op. 13-42 at 8 ("the court finds that any hardship to other parties that would be caused by an injunction against lifting the suspension of liquidation is outweighed by the irreparable harm to DSMC that would occur if an injunction were denied"). As noted above, DSMC's right to obtain meaningful judicial review is at stake. Should the ATM entity's entries be liquidated, the harm to DSMC will be irreversible, even should the current litigation result in a finding that Commerce's revocation of the order as to the ATM entity was unlawful.

In other words, in the absence of preliminary injunction again liquidation, DSMC faces the very real possibility of dumped imports entering the United States, further injuring the domestic industry. Furthermore, if the subject entries are liquidated, then the question of whether such imports may be found to be subject to the PRC-wide dumping margin (as a result of the combination of the court's decision in Court No. 09-00511 and the current litigation) becomes moot, and no relief will be available therefrom.

By contrast, neither the defendant nor the defendant-intervenors will suffer significant hardship as a result of the court granting the requested temporary restraining order and preliminary injunction. "The main effect of the injunction would be to require the continued suspension of liquidation on incoming entries," and suspension of liquidation is at most an "inconvenience" to the government. Slip Op. 13-42 at 8. *See also Timken Co. v. United States*, 6 CIT 76, 81 (1983). Similarly, any interested private party would only be inconvenienced by a delay in liquidation. *See id*. If any refunds of duties are ultimately owed to private parties, they will receive the amounts with interest, thereby compensating for any delay. *See* 19 U.S.C. §1677g(a).

Thus, the balance of hardships clearly favors DSMC on its motion.

C.  Success on the Merits

It appears DSMC is likely to succeed on the merits of its case-in-chief. Where, as here, irreparable injury is firmly established, "it will ordinarily be sufficient that the movant has raised questions which are serious, substantial, difficult and doubtful" in order to satisfy this criterion. *Timken*, 6 CIT at 80. *See also Target Corp. v. United States*, 34 CIT 1570, 1573-74 (2010); *Mittal Canada, Inc. v. United States*, 30 CIT 154, 161 (2006) ("a convincing demonstration of irreparable harm will diminish the required burden of showing a likelihood of success on the merits"); *NMB Singapore Ltd. v. United States*, 24 CIT 1239, 1244 (2000) ("although this requirement is important, it is not determinative and must be balanced against the comparative injuries of the parties").

In its appeal, DSMC has raised issues that are clearly serious and substantial, and which cast significant doubt upon Commerce's section 129 determination. *See* Complaint, CIT Court

No. 13-00168, ECF No. 9 (May 24, 2013). Namely, DSMC has raised serious questions with regard

to the propriety of the Department's revocation of the antidumping duty order as to the ATM entity.

See id. As noted above, this Court's decision and the Department's remand determination in Court

No. 09-00511 resulted in the application of the PRC-wide dumping margin, calculated in the absence

of zeroing, to the ATM entity. The revocation of the order as to the AT &M entity pursuant to the

section 129 determination underlying this appeal is accordingly premised on a determination that (1)

the Court repeatedly found to be unexplained and (2) the agency itself has now disavowed. Indeed,

the Department has requested a voluntary remand in this case. *See* Defendant's Motion for Remand,

CIT Court No. 13-00168, ECF No. 50 (Apr. 17, 2015).

        As such, and as detailed in DSMC's Rule 56.2 brief in this action, Commerce's

section 129 determination is not supported by substantial evidence and is otherwise not in

accordance with law. DSMC has therefore satisfied the standard for demonstrating the likelihood

of success on the merits in this case.

        D.  Granting an Injunction Will Serve the Public Interest

        As this court has previously found, "the public interest is best served by effective

enforcement of the trade laws, by ensuring that accurate amounts of antidumping duties are assessed

on entries covered by antidumping duty orders, and by ensuring that entities, to the extent that they

continue to sell merchandise at less than fair value, remand subject to antidumping duty orders."

Slip Op. 13-42 at 9. *See also Smith-Corona Group Consumer Prods. Div. v. United States*, 1 CIT

89, 98 (1980) (stating that the public interest is served "by the procedural safeguard of an injunction

*pendente lite* to maintain the *status quo* of the unliquidated entries until a final resolution of the merits."), *aff'd*, 713 F.2d 1568 (Fed. Cir. 1983), *cert. denied*, 465 U.S. 1022 (1984).

In this case, absent an injunction, Commerce will liquidate the ATM entity's entries according to its section 129 decision, which, as it stands, is flawed, as it was premised on a now-invalid determination regarding the ATM entity's dumping margin. The public interest would be ill-served by permitting liquidation of entries under these circumstances. In contrast, the public interest would be well-served by enjoining liquidation of entries, maintaining the *status quo*, and allowing a resolution of the issues presented on their merits.  Accordingly, the public interest is served here by enjoining liquidation of the entries at issue pending a final and conclusive court decision in this litigation.

IV.  *Commerce's Motion for Voluntary Remand and Other Matters*

The defendant filed its motion for voluntary remand pursuant to USCIT Rule 7(b) on April 17, 2015, in order to provide Commerce an opportunity to reevaluate its separate rate determination in light of the Federal Circuit's recent decision in *Advanced Technology & Materials Co., Ltd. v. United States*, 581 Fed. Appx. 900 (Fed. Cir. 2014), which affirmed the decision on the redetermination of the ATM entity's ineligibility for a separate rate.

The sole claim in DSMC's complaint challenges a decision that Commerce made as part of its section 129 determination to continue to grant the ATM entity a separate rate and to revoke the antidumping duty order with respect to it (them) as a result of recalculating its margin in a manner "not inconsistent" with the WTO panel report.  *See* Compl., ECF No. 9.  Commerce now wishes to reconsider its decision to revoke the antidumping duty order with respect to the ATM

entity in light of this court's and the Federal Circuit's subsequent findings that denial of a separate

rate for that respondent was appropriate.  *See Advanced Technology & Materials*, 938 F. Supp. 2d

at 1345-50, *aff'd*, 581 Fed. Appx. 900.

        Commerce "may request a remand (without confessing error) in order to reconsider

its previous position." *SKF USA, Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001).  Such

a remand is "usually appropriate" if Commerce's "concern is substantial and legitimate." *Id*.  The

agency's desire to reconsider its prior determination in light of later-issued court decisions is a

"substantial and legitimate" concern, and remand will conserve judicial resources by obviating the

need for a judicial ruling on a determination that Commerce itself wishes to reconsider.  In such

circumstances, voluntary remand is consistent with the court's stated objective to "secure the just,

speedy, and inexpensive determination of every action and proceeding."  USCIT Rule 1.

        The case does not reveal any substantive objection to granting Commerce's request

for voluntary remand at this time; however, in response to the defendant's motion for voluntary

remand, ATM filed a partial consent motion for an extension of time to respond thereto with a

proposed order that the court granted.  On the one hand, the current litigation schedule calls for ATM

to file a response to the DSMC's Rule 56.2 motion and brief within 30 days of a decision on the

defendant's motion for remand.  *See* Order dated May 1, 2015, ECF No. 55.  On the other hand,

ATM's partial consent motion indicated "if the Motion for Remand is granted then the Response to

the Rule 56.2 Motion may largely be moot."[6]  And in yet a further twist, as part of its reply on its

motion to dismiss ATM argues that if this case goes forward then it should be allowed to file a

---

[6] Def'-Int's Partial Consent Mot. For EOT to File Resp. To Plaintiff's Rule 56.2 Motion at1
(Apr. 28, 2015), ECF No. 52.

counterclaim pursuant to USCIT Rule 13, and that it should be allowed to conduct discovery (including deposing Commerce officials) and place information on the record "regarding all of the underpinnings of the determination" which ATM claims would be facts "establishing the correct dumping margin [for it] should be zero, even if it is not entitled to a separate rate." Def-Int's Reply on Mot. to Dismiss at 19. "The determination of Commerce in the original investigation is not on the record and before this Court. However, if it is to be made part of the record, then *all* of the record of that case, and *all* of the underpinning of the determination should be before the Court and full discovery regarding the underpinnings should be allowed." *Id*. (ATM's emphasis).

   The court will consider such a motion and responses thereto in due course if properly and formally raised.

   In the meantime, in light on the foregoing and the papers presented, remand to Commerce appears to be the proper course of action.

V.  *Conclusion and Orders*

Having considered the issues presented, in view of the foregoing, it is

ORDERED that the motion to dismiss must be, and hereby is, denied; and it is further

ORDERED that the motion for voluntary remand must be, and hereby is, granted; and it is further

ORDERED that the case will be, in the absence of any further motion, automatically remanded 30 days from the date of this opinion without further order of the court, in accordance with the Order of May 1, 2015; and it is further

ORDERED that the motion for preliminary injunction must and will be granted, pursuant to the particulars of a separate order issued concurrently herewith; and it is further

ORDERED that Commerce shall submit its results of remand within 90 days from the date of receipt of the case from the court; and it is further

ORDERED that upon filing of Commerce's final remand results with the court, the parties shall file comments, if any, on the final remand results within 30 days thereafter; and it is further

ORDERED that any responses to comments on the final remand results shall be due 21 days thereafter.

**So ordered.**

/s/  R. Kenton Musgrave
R.  Kenton Musgrave, Senior Judge


Dated:  August 20, 2015
            New York, New York