Slip Op. 16 - 48

# UNITED STATES COURT OF INTERNATIONAL TRADE

DIAMOND SAWBLADES MANUFACTURERS' COALITION,

Plaintiff,

v.

UNITED STATES,

Defendant,

and

BEIJING GANG YAN DIAMOND PRODUCTS COMPANY, and GANG YAN DIAMOND PRODUCTS, INC.,

Intervenor-defendants.

Before: R. Kenton Musgrave, Senior Judge

Court No. 13-00168

## OPINION AND ORDER

[Sustaining voluntary remand results rescinding determination to partially revoke the antidumping duty order on diamond sawblades and parts thereof from the People's Republic of China.]

Decided: May 11, 2016

*Daniel B. Pickard* and *Maureen E. Thorson*, Wiley Rein LLP, of Washington, DC, for the plaintiff.

*Alexander V. Sverdlov*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for the defendant. With him on the brief were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Franklin E. White*, *Jr.*, Assistant Director. Of Counsel on the brief was *Aman Kakar*, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, DC.

*Jeffrey S. Neeley* and *Michael S. Holton*, Husch Blackwell, LLP, of Washington, DC, for the intervenor-defendants.

Musgrave, Senior Judge: Now before the court are the results of remand ("Remand") of the administrative determination to revoke in part the antidumping duty order on diamond sawblades from the People's Republic of China ("PRC") with respect to subject merchandise produced or exported by the "ATM entity" of which the defendant-intervenors Beijing Gang Yan Diamond Products Company and Gan Yan Diamond Products Company are a part. Familiarity with the prior opinion, 39 CIT ___, Slip Op. 15-92 (Aug. 8, 2015), is presumed.

Regarding the determination of the International Trade Administration, U.S. Department of Commerce ("Commerce"), to revoke the antidumping duty order as to the ATM entity, the defendant requested remand voluntarily. The original determination to revoke had been the logical consequence of a certain section 129 proceeding that was concerned with implementing an adverse World Trade Organization panel report disrespecting Commerce's application of zeroing methodology to the ATM entity during the investigation.[1] During that investigation, the ATM entity had been deemed eligible for a rate separate from that of the PRC-wide entity. Subsequent litigation, however, resulted in alteration of the ATM entity's separate rate eligibility, *i.e.*, its *status*, and because the ATM entity's *status* (*quo ante*) was the legal predicate for the determination to revoke (*via* the matter of the section 129 proceeding that the plaintiff here challenged), the ATM entity's altered *status* necessarily triggered the defendant's request to re-evaluate the revocation determination. The matter was thus remanded for further consideration. *See generally* Slip Op. 15-92 at 34-36.

---

[1] *See Certain Frozen Warmwater Shrimp from the PRC and Diamond Sawblades and Parts Thereof From the PRC* (notice of section 129 implementation and partial revocation), 78 Fed. Reg. 18958 (Mar. 28, 2013); *see also* Uruguay Round Agreements Act, Pub. L. No. 103-465, §129, 1087 Stat. 4809, 4836-39 (1994), 19 U.S.C. § 3538.

As part of its remand, Commerce determined that the basis for the partial revocation of the antidumping duty order was no longer valid and it reinstated the antidumping duty order covering diamond sawblades from the PRC as to the ATM entity. Remand at 3-4. Perhaps coming as no surprise, this finding meets no new objection from the defendant-intervenors; their comments on the remand results refer to their position as expressed in their prior briefs before the court on the legality of the approach Commerce has taken; to which the plaintiff, Diamond Sawblades Manufacturers' Coalition ("DSMC"), responds by also incorporating by reference their various prior briefs and reiterating that the new determination, finding that revocation of the antidumping duty order is unsupported, replaced the prior determination to revoke as a matter of law. *See* Def-Ints' Cmts on Final Results of Redetermination; DSMC's Resp. to Final Results of Redetermination. The prior opinion having addressed such argumentation previously, more need not be said here.

In their comments on the remand results, the DSMC object to how Commerce has chosen to implement its determination. In particular, they claim the Remand should have been accompanied by simultaneous cash deposit instructions to U.S. Customs and Border Protection ("Customs") to collect prospective and retroactive cash deposits on ATM's entries. Pl's Cmts on Final Results of Redetermination. Their arguments on prospective collection are persuasive.

Apart from the court's inherent power to maintain the *status quo* pending judicial review, *see Scripps-Howard Radio v. FCC*, 316 U.S. 4 (1942), Congress has provided an elaborate mechanism in the unfair trade laws that requires the operation of a final administrative determination thereof to proceed unimpeded unless and until that operation is enjoined and/or the original determination is superceded, *see e.g.* 19 U.S.C. §1516a, and as previously observed (in these and

other matters, *passim*), a redetermination by the agency has the effect of a new administrative order that replaces the prior determination as a matter of law. *E.g.*, *Decca Hospitality Furnishings, LLC v. United States*, 30 CIT 357, 363, n.11, 427 F. Supp. 2d 1249, 1255, n.11 (2006). Unless that new final determination is clearly a decree *nisi*, it has immediate legal consequences.

Commerce's analysis of case law acknowledges the duty to act upon and implement a remand determination expeditiously, but it also wrestles, Hamlet-like, with certain facially-conflicting statements from an earlier *Diamond Sawblades* opinion as to whether, *vel non*, it must await the final resolution of any appeal in order to act.[2] In the end, Commerce advanced a conservative interpretation of case law to argue for restricting *Decca* and *Diamond Sawblades* to their respective facts. Def's Resp. to Cmts at 6-8. However, it is also clear that, subsequent to those decisions, the Court of Appeals for the Federal Circuit has clarified that a remand determination becomes effective on the date that the agency files its determination with the court, not when the court sustains the remand determination. *Diamond Sawblades Mfrs. Coal. v. United States*, 626 F.3d 1374, 1378 n.1 (Fed. Cir. 2010). 19 U.S.C. § 1673d(d) requires that notification of a determination be made "[w]henever [Commerce] . . . makes a determination" under section 1673d(a), which includes a final redetermination. *See id*. "[T]he statute does not require or contemplate that the notification will issue only after court review of the [agency]'s remand determination." *Id.*[3]

---

[2] *See*, *e.g.*,Def's Resp. to Cmts at 6, quoting *Diamond Sawblades Manufacturers' Coalition v. United States*, 33 CIT 1422, 650 F. Supp. 2d 1331, 1352 (2009) ("a remand determination becomes legally operative on the date that this Court issues a final decision sustaining it").

[3] If a party believes it would be aggrieved by the immediate effect of the new order reached in consequence of redetermination, that party is not without a legal remedy, *e.g.*, moving to enjoin operation of the order pending judicial review thereof. *See*, *e.g.*, 28 U.S.C. §1651; USCIT R. 65(a); *Scripps-Howard Radio*, *supra*.

It is understandable that Commerce would seek to proceed with caution concerning a matter under appeal, its position here being that issuing instructions to Customs before the court has had a chance to evaluate the Remand would seem premature, *see*, *e.g.*, Remand at 5 ("[t]his final remand redetermination *alone* does not replace the Implemented PRC Section 129 Determination") (italics added), but in accordance with the *Decca* and Federal Circuit elucidation, upon the filing of the redetermination with the court the power and duty to issue to Customs instructions on the cash deposit rate lawfully rested with Commerce, as argued by the DSMC, especially given that "[t]he central aim of the antidumping laws is to protect domestic industries from foreign manufactured goods that are sold injuriously in the United States at prices below the fair market value of those goods in their home market." *United States Steel Corp. v. United States*, 33 CIT 984, 985, 637 F. Supp. 2d 1199, 1204 (2009). *See also Sango International, L.P. v. United States*, 484 F.3d 1371, 1372 (Fed. Cir. 2007); *Nucor Fastener Division v. United States*, 34 CIT 1380, 1381, 751 F. Supp. 2d 1327, 1329 (2010).

As to whether Commerce should have instructed Customs to collect cash deposits retroactive to the effective date of reinstatement of the antidumping duty order, *i.e.*, on merchandise entered on or after March 22, 2013, the defendant argues the DSMC present no basis to believe that Customs will not be able to recover the ultimate antidumping duty liability of the ATM entity once the remand in this case is adjudicated and that the adequate protection of the United States Treasury is "for the [g]overment to worry about", and in this proceeding, at least, the court perceives no reason not to defer to Commerce's position on the point.

The Remand will be sustained and judgment entered to reflect the foregoing.

/s/ R. Kenton Musgrave
R. Kenton Musgrave, Senior Judge

Dated: May 11, 2016
New York, New York